

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00388-CV

LA ASH, INC.,

                                                        Appellant

 v.

TEXAS A&M UNIVERSITY,

                                                        Appellee

From the 85th District Court
Brazos County, Texas
Trial Court No. 06-002696-CV-85

## MEMORANDUM  OPINION

In this interlocutory appeal, LA Ash, Inc., appeals the grant of Texas A&M University's plea to the jurisdiction.  LA Ash contends in two issues that the trial court abused its discretion in dismissing its suit against A&M.  We must decide if LA Ash affirmatively demonstrated that Texas Government Code chapter 2253, commonly called the McGregor Act, which establishes a waiver of sovereign immunity for "public works contracts," applies to a contract for the removal and disposal of contaminated water and residue in ponds.  *See* TEX. GOV'T CODE ANN. ch. 2253 (Vernon 2008).

## Background

Texas A&M solicited bids from various contractors to clean the pond at its fire-training school because over the years run-off containing residue from fire retardants had accumulated in the pond. A&M hired EOG Environmental Inc. (EOG) to facilitate the clean-up project, and the parties entered into a contract in excess of $25,000. EOG then hired IDS, a subcontractor, who hired LA Ash to supply dry ash. IDS did not pay LA Ash for its labor and materials provided for the project. LA Ash sent notice to EOG and A&M, claiming that under chapter 2253 of the Texas Government Code, it was owed $44,423.70.

LA Ash filed suit claiming that the contract between A&M and EOG was a public works contract. If the project was a public-works contract under chapter 2253, A&M would have needed to secure a payment bond and LA Ash would have been a payment-bond beneficiary because it supplied labor and materials on the project. It is undisputed that A&M did not secure a payment bond. A&M claims that it is immune from suit and filed a motion to dismiss for lack of jurisdiction supported by affidavit testimony and documentary evidence. The trial court granted the motion, and LA Ash now brings this interlocutory appeal.

## Standard of Review

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *Texas Dep't Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Texas Natural Resource Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849,

855 (Tex. 2002).  The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject-matter jurisdiction.  *Texas Ass'n Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).  In determining whether jurisdiction exists, we accept the allegations in the pleadings as true and construe them liberally in favor of the plaintiff. *Texas Dep't Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

**Public Works Contract**

In its first issue, LA Ash addresses whether the Texas A&M-EOG contract was a public-works contract under the McGregor Act.

The McGregor Act governs public-work performance and payment bonds and covers contracts with governmental entities, requiring general contractors to execute payment and performance bonds to the governmental entity before commencing construction.  *See generally* TEX. GOV'T CODE ANN. §§ 2253.001, 2253.073, 2253.021 (Vernon 2008).

The Texas legislature promulgated the McGregor Act to provide subcontractors and suppliers involved in public-work contracts a basis for recovery because a subcontractor or a supplier cannot place a lien against a public building.  *See Redland Ins. Co. v. Sw. Stainless, L.P.*, 181 S.W.3d 509, 511 (Tex. App.—Fort Worth 2005, no pet.); *Capitol Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co.*, 170 S.W.3d 144, 147 (Tex. App.—San Antonio 2005, pet. denied); *Ybanez v. Anchor Constructors, Inc.*, 489 S.W.2d 730, 739 (Tex. Civ. App.—Corpus Christi 1972, writ ref'd n.r.e.).  The McGregor Act is intended to be a simple and direct method for claimants who supply labor and materials in the construction of public works to give notice and perfect their claims.

*Tex. Dep't of Mental Health & Mental Retardation v. Newbasis Cent., L.P.*, 58 S.W.3d 278, 280 (Tex. App.—Fort Worth 2001, pet. dism'd by agr.) (citing *City of LaPorte v. Taylor*, 836 S.W.2d 829, 832 (Tex. App.—Houston [1st Dist.] 1992, no writ)).  Texas courts have long recognized that the McGregor Act is highly remedial and should receive the most comprehensive and liberal construction possible to achieve its purposes.  *Id.* at 280 (citing *Ramex Constr. Co. v. Tamcon Servs., Inc.*, 29 S.W.3d 135, 139 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on reh'g), *City of Laporte*, 836 S.W.2d at 832, and *United Benefit Fire Ins. Co. v. Metro. Plumbing Co.*, 363 S.W.2d 843, 847 (Tex. Civ. App.—El Paso 1962, no writ)).

The McGregor Act requires a governmental entity entering into a public-work contract with a prime contractor for more than $25,000 to obtain a payment bond from the prime contractor.  *See* TEX. GOV'T CODE ANN. § 2253.021(a).  A governmental entity that fails to obtain a payment bond from a prime contractor for a project is subject to the same liability that a surety would have if the surety had issued a payment bond on the project.  *See id*. § 2253.027.

Section 2253.001 defines "public work contract," but it does not define "public work."  The heart of LA Ash's argument is that the contract to clean up the pond was a contract for "public work."  *Id.* § 2253.001.  LA Ash specifically argues that because A&M, as a governmental entity, failed to obtain a payment bond from EOG, a prime contactor, when the two entered into a public-work contract, Texas A&M is directly liable to LA Ash for its services and material provided for the project.  The question we

are called upon to answer is whether the remediation of a pond is within the definition of "public work" as intended by the McGregor Act. *Id*. § 2253.021

In viewing the caselaw, we know that a public-work contract does not include all contracts entered into by a governmental entity. A "public work" in the McGregor Act has been limited to traditional construction projects involving the development or repair of a building. *See e.g., C. Green Scaping, L.P. v. Westfield Ins. Co.*, 248 S.W.3d 779, 780 (Tex. App.—Fort Worth 2008, no pet.) (public work contract to reconstruct a portion of a street); *Lab. Design & Equip., Inc. v. Brooks Dev. Auth.*, --- S.W.3d ---, ---, 2008 Tex. App. LEXIS 3 at *2 (Tex. App.—San Antonio Jan. 2, 2008, no pet.) (public-work contract to remodel city building); *Scoggins Constr. Co. v. Dealers Elec. Supply Co.*, --- S.W.3d ---, ---, 2007 Tex. App. LEXIS 9874 at *1 (Tex. App.—Corpus Christi Dec. 20, 2007, pet. denied) (public work contract to build elementary school); *Capitol Indem. Corp.*, 170 S.W.3d at 146 (public-work contract to make additions and renovations to a school district building); *Newbasis Cent.*, 58 S.W.3d at 279 (public work contract to build precast concrete above-ground storage tank and accessories); *Graham v. San Antonio Machine & Supply Corp.*, 418 S.W.2d 303, 306 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.) (public-work contract to construct water supply system and treatment plant); *see also* BLACK'S LAW DICTIONARY 1639 (8th ed. 2004) ("public works. Structures (such as roads or dams) built by the government for public use and paid for by public funds."). Moreover, Texas courts have expressly held that the definition of public work does not include a contract with a county to prepare and deliver a map, plat-book system, or a contract to develop and implement a records-retention schedule, a disaster-recovery

plan, and a storage solution for old records. *Employers' Casu. Co. v. Stewart Abstract Co.*, 17 S.W.2d 781 (Tex. Comn'n App. 1929, judgm't adopted*); Acratod Co. v. Housing Auth. for City of Houston,* 1999 Tex. App. LEXIS 889, 1999 WL 82450 (Tex. App.—Houston [1st Dist.] Feb. 11, 1999, no writ).

In *Employers Casualty*, the court discussed the meaning of "public work." Under the McGregor Act, the court determined that a contract with a county to prepare and deliver a map, plat book system, and delinquent tax list was not "for the construction of any public building, or the prosecution and completion of any public work." *Employer's Casualty*, 17 S.W.2d at 782. The court observed that while construction of a county road is a public work, it can hardly be said that a contract for the purchase of a road grader would be a public work. *Id.* In construing the Texas Public Bid Law article 1560, the predecessor to chapter 2253, the Commission of Appeals stated:

> Not every contract entered into, and every work undertaken by the state, county, municipality, or other agency enumerated in the statute is necessarily, in the broadest sense, a "public work", for such agencies are public agencies and act only for the public. But obviously the words "public work" were not used in that broad sense, for that would make the statute applicable to every contract of whatsoever character, a conclusion at once unreasonable. The "public work" contemplated was meant to embrace those contracts akin to building contracts.

*Id.*

Although *Employers' Casualty* was interpreting the predecessor to chapter 2253, other language in chapter 2253 supports the articulation in *Employer's Casualty*. The words "construction" or "repairing" indicate structural work. TEX. GOV'T CODE ANN. 2253.001(4); 2253.021(g). Moreover, the word "contractor" is used throughout the code. This term is often used in building contracts, but is not used in those contracts that are

essentially for services, supplies, equipment, and the like. *See Employer's Casualty*, 17 S.W.2d at 782.

LA Ash argues that *Newbasis* stands for the proposition that environmental remediation projects, like the one between EOG and Texas A&M, involve public work, but the contract there involved the construction and installation of a permanent concrete storage tank. *Newbasis Cent.*, 58 S.W.3d at 279. *Newbasis* is thus distinguishable because it involved the construction of a permanent fixture, which has been recognized as coming within the scope of a public-work contract. *See Overstreet v. Houston County*, 365 S.W.2d 409, 412 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.) (bond required for central system air conditioners installed as fixtures or improvements of fixed nature). The contract between A&M and EOG to clean up the pond was for the performance of a service, not the construction or installation of a fixture.

The materials that IDS purchased from LA Ash were incident to the service EOG was providing to Texas A&M. The materials were not used for the "construction" or "repair" of a public building or public work because they were not used for the repair or improvements of a public building.

We acknowledge that the McGregor Act is to be construed liberally, but we hold that the McGregor Act does not apply in this case. *See Redland Ins. Co. v. Sw. Stainless, L.P.*, 181 S.W.3d 509, 512 (Tex. App.—Fort Worth 2005, no pet.) (liberally construing McGregor Act to require only substantial compliance with Act's notice requirements). The weight of out-of-state authority indicates that a contract for pond clean-up is not within the intendment of statutory requirements for a public-work contract. *See Wallace*

*Stevens, Inc. v. Lafourche Parish Hosp. Dist. No. 3*, 323 So.2d 794, 796 (La. 1975) (citing several non-Texas cases for the proposition that public utility contract is not public-work contract), *superseded by statue as recognized in Barabay Prop. Holding Corp. v. Boh Bros. Constr. Co., L.L.C.*, --- So.2d ---, ---, 2008 La. App. LEXIS 722 at *2 (La. App. 1st Cir. May 2, 2008) (removal of excavated soil not recognized within definition of a public-work contract); *Modern Transit-Mix, Inc. v. Michigan Bell Tel. Co.*, 130 Mich. App. 300, 343 N.W.2d 14, 15 (Mich. Ct. App. 1983) (laying telephone cables under city sidewalks not included in Michigan version of McGregor Act); *see also* Russell G. Donaldson, Annotation, *What Constitutes "Public Work" Within Statute Relating to Contractor's Bond*, 48 A.L.R.4th 1170 (1987); 64 AM.JUR.2d *Public Works and Contracts*, § 47, p. 899 (1972).

The purpose of section 2253.021 is to protect contractors and subcontractors that enter into construction contracts to construct, alter, or repair public structures or work because they are unable to obtain liens on the relevant public property. Interpreting this statute to include service contracts, such as cleaning ponds, would improperly expand the reach of this statute. We conclude that the contract between Texas A&M and EOG does not fall within the purview of "public work" or the definition of "public work contract" for purposes of chapter 2253. Therefore, the trial court did not err in dismissing LA Ash's case for lack of jurisdiction. We overrule LA Ash's first issue.

### Discovery

In its second issue, LA Ash argues that the trial court erred by refusing to permit it to conduct discovery to develop evidence necessary to the jurisdictional issues. As noted above, whether the trial court has subject-matter jurisdiction is a matter of law.

*IT-Davy*, 74 S.W.3d at 855. When a plea to the jurisdiction challenges the pleadings, we determine if the facts alleged affirmatively demonstrate the court's jurisdiction to hear the case. *DART v. Thomas*, 168 S.W.3d 322, 324-25 (Tex. App.—Dallas 2005, pet. denied) (citing *Miranda*, 133 S.W.3d at 226). "When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence beyond the allegations in the pleadings, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that the determination of whether subject matter jurisdiction exists must be made as soon as practicable." *Miranda*, 133 S.W.3d at 227.

LA Ash had the burden of showing an affirmative waiver of sovereign immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). The trial court reviewed the facts presented by LA Ash in its petition, assumed those facts were true, and determined that it was without jurisdiction to hear the case. LA Ash has not shown how discovery would have established that the contract between Texas A&M and EOG was more than a contract for the clean up of the pond at the fire school. Moreover, A&M was a party to the lawsuit thirteen months before the suit was dismissed, giving LA Ash ample time to discover facts necessary to establish subject matter jurisdiction.

Here it is apparent from the face of the pleadings that Texas A&M was immune from the suit. Because LA Ash has not shown how discovery or evidence could establish that the trial court had jurisdiction, when the pleadings establish otherwise, we cannot say that trial court abused its discretion in refusing to allow discovery. *See*

*Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) (trial court may dismiss suit filed against governmental entity when it is apparent from pleadings that governmental entity is immune). We overrule LA Ash's second issue.

## Conclusion

Because we find neither legislative consent nor a statutory exception to sovereign immunity, we cannot say the trial court erred in dismissing LA Ash's suit. *See Dallas Metal Fabricators, Inc. v. Lancaster Indep. Sch. Dist.*, 13 S.W.3d 123 (Tex. App.—Dallas 2000 pet. denied). We affirm the trial court's order.


BILL VANCE
Justice


Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
Affirmed
Opinion delivered and filed October 29, 2008
[CV06]